UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 24-cr-139-4 (TJK) |
| : | |
| ROSELLE ARTIS : | |
| : | |
| Defendant. : | |

**UNITED STATES' MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing as to Defendant Roselle Artis (hereinafter, the "Defendant").[1] On April 24, 2025, the Defendant pled guilty to Count 4 of the Indictment [ECF No. 58], charging him with conspiracy to provide contraband to an inmate of a federal prison, in violation of 18 U.S.C. §§ 1791(a)(1), 1792(b)(1), 1791(b)(3) and 1791(b)(4), in violation of 18 U.S.C. § 371.

For the reasons set forth below and consistent with the terms of the plea agreement, the United States respectfully requests that the Court impose a sentence of 33 months of incarceration, to be followed by 36 months of supervised release.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

The Defendant's guilty plea is the result of his deliberate participation in a sophisticated, multi-state scheme to provide contraband to inmates in federal prisons. From at least October 2023 until March 2024, within the District of Columbia and elsewhere, Artis, along with his co-conspirators, conspired together to obtain and distribute multiple prohibited items into federal prisons, including two types of narcotics (marijuana and Buprenorphine) and cellular telephones.

---

[1] Sentencing is scheduled for August 12, 2025.

To further the conspiracy, they purchased and used drones, such as the one in Figure A below, for this express purpose:



*Figure A*

On multiple occasions between October 2023 and March 2024, Artis and his co-conspirators traveled across state lines to transfer these prohibited items to inmates at multiple Federal prisons. In one such example, on October 29, 2023, Artis, along with two co-conspirators, traveled from the Washington, D.C. area to the vicinity of FCI Edgefield, located in Edgefield, South Carolina, near the border of South Carolina and Georgia. During a traffic stop of Artis's vehicle, which he was driving, law enforcement located a plethora of items, including but not limited to the following: a SwellPro aerial drone; approximately 521 units of Suboxone, which contains Buprenorphine; approximately 89 grams of marijuana; approximately 14 cell phones (in the trunk); and red and black bolt butters (in the trunk), as depicted in Figure B below:

  

*Figure B*

As part of his role in the conspiracy, Artis also leased an apartment, which the co-conspirators used, in part, to store contraband. During the execution of a search warrant at the apartment on March 13, 2024, Artis and his co-conspirators were present. Inside, law enforcement found a firearm and a host of items used in the conspiracy, as seen in Figure C below: 1) a loaded Draco firearm on the floor in the bedroom; 2) a suitcase in the bedroom containing approximately 1.8 kilograms of marijuana; 3) multiple quantities of narcotics that field tested positive for the presence of dimethylpentylone and/or fentanyl; 4) approximately 210 doses of Suboxone, which contains Buprenorphine, in kitchen drawers; 5) packaging material, a heat sealer, digital scales, and masks in the main living and kitchen areas; 6) a SwellPro aerial drone in the bedroom; 7) a sealed package containing cell phones and cigarettes in a closed in the main living area; 8) and red and black bolt cutters, as depicted below:

 







*Figure C*

## II.   LEGAL STANDARD

Pursuant to 18 U.S.C. § 3553(a), the Court shall impose a sentence that is sufficient, but not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to "provide the defendant with needed educational or vocational training."  18 U.S.C. § 3553(a)(2).  In addition,

4

the Court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" the types of sentences available, the Sentencing Guidelines; any pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. *Id.* § 3553(a).

The listed factors in 18 U.S.C. § 3553(a) include the following:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;

2) The need for the sentence imposed –
   a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   b) To afford adequate deterrence to criminal conduct;
   c) To protect the public from further crimes of the defendant; and
   d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) The kinds of sentences available;

4) The kinds of sentence and the sentencing range established for –
   a) The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
      i) Issued by the Sentencing Commission . . . ; and
      ii) That . . . are in effect on the date the defendant is sentenced

5) Any pertinent policy statement –
   a) Issued by the Sentencing Commission . . . and
   b) That . . . is in effect on the date the defendant is sentenced

6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) The need to provide restitution to any victims of the offense.

Procedurally, after calculating the applicable Guidelines range, the Court should next consider all the applicable factors set forth in 18 U.S.C. § 3553(a). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations

relevant to sentencing as articulated in Section 3553(a). *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007).

### III.   GUIDELINES CALCULATION

#### A.   Total Offense Level

As detailed in the Final Presentence Report (the "PSR") [ECF No. 69], the base offense level for a violation of 18 U.S.C. § 371 is governed by U.S.S.G. § 2X1.1. *See* PSR ¶ 42. In a conspiracy case, such as this, the base offense level is determined by the offense level for the substantive offense, plus any applicable adjustments. *See* U.S.S.G. § 2X1.1. Here, the substantive offense is a violation of 18 U.S.C. § 1791, which is governed by U.S.S.G. § 2P1.2.

U.S.S.G. §2P1.2(c)(1), in turn, governs offenses involving providing or possessing contraband in prison and states that "[i]f the object of the offense was the distribution of a controlled substance, apply the offense level from §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking)." Because the relevant conduct involved more than 2.5 kilograms but less than 5 kilograms of converted drug weight, the PSR calculates the base offense level as 10. *See* PSR ¶ 42. The PSR further adds a two-level enhancement because a dangerous weapon (firearm) was possessed, pursuant to U.S.S.G. § 2D1.1(b)(1), and a two-level enhancement because the object of the conspiracy was the distribution of a controlled substance in a prison, correctional facility, or detention facility, pursuant to § 2D1.1(b)(4). *See id*. As a result, the PSR calculates the base offense level as 14 and the final offense level, after adjustments for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), as 12. *See* PSR ¶¶ 42, 51.

As also noted in the PSR, the United States filed its objection to the offense calculation based on U.S.S.G. § 2P1.2(c)(1), which *further* states that "if the defendant is convicted under 18 U.S.C. § 1791(a)(1) and is punishable under 18 U.S.C. § 1791(b)(1), and the resulting offense

level is less than level 26, increase to level 26." The PSR writer concluded that, because Artis pled guilty to 18 U.S.C. § 371, which provides a statutory maximum of five years of imprisonment, he was not convicted of, and is not punishable under, 18 U.S.C. § 1791. As a result, he does not meet the criteria set forth in U.S.S.G. § 2P1.2(c)(1).

As also noted in the PSR, U.S.S.G. § 1B1.3, comment(n.7), states that "[a] particular guideline…may expressly direct that a particular factor be applied only if the defendant was *convicted of* a particular statute (emphasis added)." The United States first notes the distinction between the plain language of U.S.S.G. § 1B1.3, comment(n.7), which addresses a defendant convicted "of" a statute, and U.S.S.G. § 2P1.2(c)(1), which addresses a defendant convicted "under" a statute. This distinction appears to be reflected elsewhere in the Guidelines. For example, U.S.S.G. § 2D1.11(b), which addresses the applicability of specific offense characteristics, appears to distinguish between the two. *Compare* U.S.S.G. § 2D1.11(b)(2), which applies "[i]f the defendant is convicted *of*" (emphasis added) violating certain statutory provisions, *with* U.S.S.G. § 2D1.11(b)(5), which applies "[i]f the defendant is convicted *under*" (emphasis added) other statutory provisions.

As a result, the United States respectfully submits that the inquiry turns not on what statute the defendant was convicted of violating, but rather on whether he may fairly be said to have been convicted under the relevant statutes for purposes of the Guidelines. Although there appears to be limited case law on this issue, in *United States v. Cruz*, 58 F.3d 550 (10th Cir. 1995), the Court addressed the interplay between 18 U.S.C. § 371, which carries a five year maximum penalty, and the specific Guidelines provision at issue here. Like Artis, the defendant in that case pled guilty to conspiracy, pursuant to 18 U.S.C. § 371, to violate 18 U.S.C. § 1791. *Id*. at 553. Notwithstanding the fact that the count of conviction was 18 U.S.C. § 371, the district court applied

7

U.S.S.G. § 2P1.2(c)(1). *Id*. at 553. Although the Tenth Circuit ultimately reversed for additional factual findings, it found that the district court correctly applied the statutes and guidelines. *Id*.

The United States respectfully submits that U.S.S.G. § 2P1.2(c)(1) similarly applies here, resulting in an offense level of 26. After a three-level reduction, pursuant to U.S.S.G. § 2X1.1(b)(2), and adjustments for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b), the final offense level for Count One is 20.

### B. Criminal History Category

The PSR writer calculates the Defendant to have a total of zero criminal history points, which places him in Criminal History Category I. *See* PSR ¶ 69.

### C. Sentencing Guideline Range

A final offense level of 20 and Criminal History Category I results in a guidelines range of 33 to 41 months of incarceration, 1- 3 years of supervised release, and a fine range of $15,000 to $55,000. *See* PSR ¶¶ 147, 159.

## IV.  ARGUMENT

As stated above, the United States respectfully requests that the Court sentence the Defendant to a term of 33 months of incarceration, followed by 36 months of supervised release. For the reasons detailed below, the United States respectfully submits that a sentence of 33 months is sufficient, but not greater than necessary, to serve the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

### 1.  The Nature, Circumstances, and Seriousness of the Offense

The defendant took part in a sophisticated effort, which involved multiple players across state lines, to secure and sneak a variety of contraband into multiple prisons. Indeed, the conspiracy was sophisticated enough that the co-conspirators knew the best ways of getting

8

contraband inside – by procuring and utilizing drones – presumably to maximize the amount of contraband they could facilitate while minimizing any personal risk.  Nor does it appear they were motivated by any familial connection to certain inmates, and the defendant's conduct was not limited to one isolated instance; on the contrary, it appears that the defendant was connected to a larger group involved in drug trafficking and that the driving force behind the conspiracy was simply pecuniary gain.  Moreover, the conspiracy was not limited in scope to just one particular item – indeed, it involved at least two controlled substances, cigarettes and cellphones.

It is difficult to adequately highlight the serious nature of the defendant's conduct.  By supplying contraband, the defendant's conduct posed not only a risk to correctional officers but to all personnel working at federal prisons, as well as the inmates, by threatening the ability of prison administrators to maintain the integrity and security of the prisons.  Moreover, the defendant's actions undermined one of the key goals of imprisonment: rehabilitation.  By illegally supplying inmates with contraband, including narcotics, the defendant facilitated the continued criminal conduct of numerous individuals and likely made it even harder for others not to stumble when tempted by the allure of the contraband.

### 2. The Defendant's History and Characteristics

At the outset, it should be noted that the United States credits the defendant's acceptance of responsibility in this case; indeed, he is the only co-conspirator to have pled guilty so far.  Notwithstanding his criminal history score and even setting aside traffic or minor offenses, however, this appears to represent the defendant's *tenth* conviction since the age of 19.  The PSR also details a host of other arrests and encounters with law enforcement, including a firearms arrest as recently as 2024.  Although the United States also recognizes his record of pretrial compliance, it is clear that prior interactions with law enforcement and brief periods of incarceration have not

deterred him to date. Indeed, it appears he has never faced any significant consequence or period of imprisonment, and this case illustrates an escalation in his criminal conduct from prior offenses. As a result, the United States submits that a guidelines sentence – albeit one at the low end – is necessary to deter him from future criminal conduct.

### 3. The Need to Promote Respect for the Law and Deterrence

As called for by the statute, the sentence should reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, and provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2). The United States respectfully submits that the need to deter not only the defendant, but also others, weighs in favor of the recommended sentence. The need for deterrence is particularly significant here, where the defendant's conduct (along with those of his co-conspirators) appears to have implicated multiple other individuals and federal prisons.

In a case such as this, where the defendant's actions were felt by many and visible to yet more, a prison sentence is the best measure of deterrence available to the Court, and the United States submits that a sentence of 33 months is appropriate. Such a sentence accomplishes the aims of § 3553(a)(2) in both a general and particularized manner. As applied to the defendant, such a sentence reflects both the seriousness and dangerousness of the Defendant's conduct in this case. This is particularly true where, as here, he has yet to be deterred, despite having been prosecuted previously. With respect to general deterrence, this recommended sentence promotes respect for the law and the safety of the community by serving as a deterrent to brazen conduct such as that perpetrated by the defendant and his co-conspirators in this case, and it will ensure that others are not similarly emboldened.

### 4. Other factors

The United States' recommended sentence is also justified to protect the public from the

defendant, who carried out his conduct up until his arrest in this case, as demonstrated by the recoveries of drugs and a gun from his residence.

## V.     CONCLUSION

For the foregoing reasons, the United States recommends that the Court sentence the defendant to 33 months of imprisonment, followed by 36 months of supervised release. Such a sentence serves the interest of justice and appropriately balances the sentencing factors articulated under 18 U.S.C. § 3553(a).

                                                    Respectfully submitted,

                                                    JEANINE FERRIS PIRRO
                                                    UNITED STATES ATTORNEY

By:    */s/*
       ANDREA DUVALL
       AR Bar No. 2013114
       Assistant United States Attorney
       601 D Street, NW
       Washington, D.C. 20530
       andrea.duvall@usdoj.gov
       202-394-3006